NICHOLLS v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 6, 1908.)

MUNICIPAL CORPORATIONS (§ 794*)—DRAWBRIDGES—INJURY TO PEDESTRIANS—
    LIABILITY.
        Though a municipal corporation must guard travelers upon its high-
    ways against such dangers as can be foreseen, or ought to be with ordi-
    nary care, it is not liable for injury from extraordinary accidents, which
    ordinary care would not guard against; and hence the city is not liable
    for injury to a child whose head was caught between the railing of a
    drawbridge and the railing of the stationary part of the bridge, while
    she was watching a passing vessel, by the drawbridge being moved a few
    inches to its proper place just as the draw was being closed and after a
    gate in the pathway had been opened to allow passage onto the draw-
    bridge.
        [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§
    1653–1659; Dec. Dig. § 794.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Catherine Nicholls, by Peter Nicholls, guardian ad litem, against the city of New York. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Theodore Connoly, for appellant.
Rufus L. Weaver, for respondent.

HOUGHTON, J. At the time of the accident, to recover damages for which this action is brought, the plaintiff was seven years of age, and had been permitted by her parents to go, in company with another child somewhat older, upon what is known as the "Willis Avenue Bridge," which crosses the Harlem river in the city of New York. The bridge is designed for both foot passengers and vehicles, and on the outer side of the pathway for foot passengers is an openwork iron railing. It is a drawbridge, and in this pathway, as well as the roadway, there are gates to stop progress while the draw is open. The bridge is of steel and of ponderous proportions, and the draw is operated by steam power. At the time of the accident the draw had been opened for the passage of a vessel and was about being closed. It is claimed by the plaintiff that, the gate in the pathway having been opened, she passed through to the draw, and for the purpose of looking at the passing vessel put her head through the opening between the outside railing of the drawbridge and the railing of the bridge proper, and, the drawbridge being moved a few inches to its proper place, her head was caught and severely bruised. The negligence upon which the plaintiff relies is the opening of the gate in the pathway before the draw was wholly closed.

Conceding that the accident happened as the plaintiff claims, and that the gate was opened before the draw was fully in place, of all of which there is very grave doubt, still we think no actionable negligence on the part of the defendant was shown. It is the duty of a municipal corporation to guard travelers upon its highways against such dangers as can or ought to be anticipated or foreseen in the exercise of reasonable care and prudence; but a municipality is not liable in damages for injuries resulting from extraordinary accidents which would not be guarded against in the exercise of such reasonable care and prudence. Beltz v. City of Yonkers, 148 N. Y. 67, 42 N. E. 401; Lane v. Town of Hancock, 142 N. Y. 510, 37 N. E. 473.

It was not to be expected that any one would put his head between the railing of the draw and that of the permanent structure, so that it would be squeezed by moving the draw three or four inches to its proper position. Such an act would not be ordinary use for the purposes of travel. Had the plaintiff's feet been caught in the draw, or had she been thrown from her balance by its slight movement while walking, quite another question would have been presented. So far as appears, however, the pathway was entirely safe for travel, notwithstanding the pin which held the draw had not been put in place.

It is quite improbable that the gate in the pathway was opened before the draw was actually closed. If the determination of the case depended upon that question alone, we should feel constrained to reverse the judgment as against the weight of evidence. On the facts proven by the plaintiff, however, no actionable negligence was established against the defendant; for the accident was of such an extraordinary character that the defendant was under no obligation to guard against it. The learned trial court erred in refusing to dismiss the complaint, as well as in declining to set aside the verdict after it had been rendered.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.